```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
KECIA A. KEMP,                                              :    **MEMORANDUM**
                              Plaintiff,                    :    **DECISION AND ORDER**
                                                            :
            - against -                                     :    16-cv-1080 (BMC)
                                                            :
CITY OF NEW YORK DEPARTMENT OF                              :
  HEALTH,                                                   :
                                                            :
                              Defendant.                    :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff brings this action for employment discrimination and retaliation under Title VII, the Family and Medical Leave Act ("FMLA"), and corresponding provisions of New York State law. Her Title VII claims have not been administratively exhausted and her FMLA claims fail to state a claim. For these reasons, defendant's motion to dismiss is granted with prejudice as to the federal claims (subject to exhaustion of the Title VII claim) and without prejudice as to her state law claims.

## BACKGROUND

The amended complaint is a chronologically fractured, stream-of-consciousness listing of numerous grievances against a multitude of co-workers (I count at least nine) over a nine year period. Plaintiff's virtually constant friction with her coworkers and supervisors from 2007 onward culminated in a compelled psychiatric exam in December 2016 and the placement of plaintiff on indefinite leave, with pay, in January 2016, although it now appears that she has returned, or at least that her employer has directed her to return, to work. The amended complaint can be summarized as follows.

Plaintiff began working for the New York City Department of Health and Mental Hygiene ("DOH") in 2000. The amended complaint alleges that in 2007, she filed an internal complaint through her Union against a managing director, Brian Toro, for engaging in "inappropriate sexual behavior" with a co-worker. Plaintiff claims that DOH promoted Toro, but disciplined the co-worker.

Plaintiff next alleges that in 2008, she filed another internal complaint, this time with the DOH Inspector General's Office, complaining that as a result of plaintiff's testimony in an unspecified criminal case, a supervisor, Yvonne Flores, and an otherwise undescribed co-worker named Sonia Rodriguez, "posted pictures of Plaintiff and distributed them to her co-workers and colleagues as well as posted them throughout New York City." The amended complaint fails to allege any additional details about this incident, except to say that the Inspector General took no action.

In 2010, plaintiff filed yet another internal complaint with an otherwise unidentified person named Sam Sebiyam because Flores refused to issue a parking permit to plaintiff. Plaintiff alleges that Sebiyam took no action on her complaint because, as Flores had informed plaintiff, Sebiyam was the godfather to Flores' children.

At some time or times prior to or during 2010, plaintiff also complained to her Union that uncertified employees were drawing blood and misdiagnosing patients. Plaintiff alleges that as a result of her complaints, DOH stopped assigning plaintiff to draw blood. In addition, even though she was not authorized to give results of HIV tests to patients, DOH required plaintiff to present herself as a counselor and discuss sexually transmitted diseases with patients. She alleges that once she began to complain about this, funds that DOH received from the federal and state government to compensate employees for this work were no longer paid to her, but were

allocated to other bureaus within DOH. Plaintiff, however, does not allege that this impacted her salary.

Plaintiff, who describes herself as Native American, further alleges that she was discriminated against on the basis of her national origin when she was transferred to a facility in Harlem in 2011 for no reason. She protested to Toro because a co-worker had told her that the workers in the Harlem facility were hostile toward "Native/African Americans," but her protests were ignored. Within the first week at the Harlem facility, directors Susan Wright and Frantz Desire continuously moved her from her assigned work station "in an effort to deem [her] 'unfit' for field services."

While at the Harlem facility in May 2012, Alvilyn Negron, who plaintiff only describes as a "Public Health Advisor," called the police and falsely accused plaintiff of carrying a weapon and threatening her with a knife, although plaintiff says it was a mail opener, not a knife. Negron also filed an internal complaint and DOH held a disciplinary hearing, which resulted in plaintiff being suspended for ten days without pay, even though Negron had admitted to plaintiff that her complaint was false, and that she had only done it because some unidentified person in "upper management forced her to make such statements" upon pain of termination. Plaintiff also alleges that between March and May of 2012, Negron would approach plaintiff "each day requesting sexual favors," and when plaintiff would refuse, Negron would give her an "evil stare."

Plaintiff further alleges that between January 2012 and May 2012, a co-employee named Silvano Niccolich would enter plaintiff's office while she was with patients and "pretend to look for garbage." Other times, he would stand outside plaintiff's window and attempt to hear plaintiff's conversations.

3

Plaintiff's next complaint regards Millicent Freeman, a co-employee who, at some point in time, "accused Plaintiff of stealing and search[ed] her bag without Plaintiff's consent." Plaintiff reported the incident to Toro, but no action was taken. Plaintiff further alleges that on "numerous occasions," she was falsely accused of stealing, called unspecified derogatory terms, and threatened by some unidentified person or persons at DOH that "she will be incarcerated." Plaintiff was also falsely accused of "talking loudly in the hallways and making derogatory remarks," although the complaint fails to allege who had accused her.

In 2012, plaintiff was again transferred again, this time to DOH's "Gotham" facility. There, under Toro's supervision, plaintiff continuously received poor evaluations, even though prior to her transfer, she claims that she had received "Very Good" and "Outstanding" evaluations. On one occasion, she grieved her poor evaluation and it was changed to "Very Good." Toro also gave plaintiff assignments that required her to travel to all five boroughs and out of state, and then claimed that plaintiff had only completed a portion of her tasks, even though she "conduct[ed] over one-hundred (100) field records per day."

Beginning in December 2014, plaintiff made a number of requests to DOH and her Union for a "safety transfer," although the meaning of that term is not explained. Plaintiff claims that none of these requests were granted.

On December 18, 2015, the Director of DOH's Employment Law Unit, Rose Tessler, directed plaintiff to report for a psychiatric evaluation, which was performed, inadequately in plaintiff's view, by Dr. David Salvage. The results of the examination are not described in the complaint, but, based on what happened next, we can infer that they included a diagnosis of paranoia. In light of Dr. Sage's examination, on January 13, 2016, DOH placed plaintiff on an indefinite leave of absence pursuant to New York Civil Service Law § 72, and plaintiff was

4

escorted off the premises by DOH police on January 15, 2016. An administrative judge ordered on January 26, 2016 that plaintiff had to be paid while on leave.

Plaintiff arranged for "an independent state medical examiner" to examine her, and his findings contradicted Dr. Salvage's in that they "did not show any evidence of paranoia or the state of mind alleged by Dr. Salvage." Plaintiff then signed a settlement agreement with DOH, but revoked it shortly thereafter. Four days after revoking the settlement agreement, Tessler advised plaintiff that she had to return and work her regular schedule.

While her leave proceedings for alleged medical reasons were pending, plaintiff requested family leave to care for her mother. Plaintiff therefore alleges that her suspension for medical reasons was pre-textual and "based upon" plaintiff's "FMLA protected status," in addition to her race and national origin.

Plaintiff states that she serially filed five administrative claims with the EEOC between June 2012 and July 2016. Up through April 4, 2014, her EEOC claims consisted of complaints regarding discriminatory and retaliatory behavior by Toro and, sometimes, unnamed (at least in the amended complaint) co-workers. In December 2015, however, plaintiff filed a claim with the EEOC against DOH for "its retaliatory compulsion of Plaintiff to undergo [an] involuntary medical evaluation." Then in July 2016, plaintiff filed an EEOC charge against DOH "in furtherance of its indefinite involuntary leave."

## DISCUSSION

### I. Proper Name of Defendant

Defendant asserts that under § 396 of the New York City Charter, DOH is not a suable entity, and that the proper defendant is the City of New York. Section 396 states that, "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought

5

in the name of the city of New York and not in that of any agency, except where otherwise provided by law." Indeed, it is commonly the case that when departments of New York City are named in an action, they are dismissed as improper defendants. See, e.g., Jenkins v. City of New York, 478 F.3d 76, 93 n. 19 (2d Cir. 2007) (New York City Police Department); Reyes v. City of New York, No. 16-CV-823, 2016 WL 1588503, at *2 (E.D.N.Y. April 18, 2016) (New York City Department of Correction); Green v. Pryce, No. 15-CV-3527, 2015 WL 4069176, at *2 (E.D.N.Y. July 1, 2015) (New York City Human Resources Administration); Dublin v. New York City Law Department, No. 10 Civ. 2971, 2012 WL 4471306, at *2 (S.D.N.Y. Sept. 26, 2012) (New York City Law Department).

Plaintiff, however, argues that DOH may be named as a defendant pursuant to § 564 of the New York City Charter, which establishes DOH and specifically states that "[t]he department may sue and be sued in and by the proper name of 'Department of Health and mental hygiene [sic] of the City of New York,' and service of all process in suits and proceedings against or affecting the department, or other papers, may be made upon the commissioner or official designated by him, and not otherwise . . . ." Defendant has not replied to plaintiff's citation to § 564 nor has it cited to any authority holding that this provision does not mean what it says. I thus find that, pursuant to § 564, DOH falls within § 396's exception clause – "except where otherwise provided by law" – and that it has been properly named as a defendant in this action.

**II.    Administrative Exhaustion**

Defendant contends that despite the amended complaint's reference to multiple EEOC complaints, only one right-to-sue letter is annexed to it. In opposing defendant's motion, plaintiff addresses only the EEOC letter dated May 11, 2016, which allows her to bring suit for violations of the Americans with Disabilities Act.

6

In fact, the right-to-sue letter references only the ADA. Plaintiff does not even argue in opposition to the motion that she submitted any Title VII claims to the EEOC, let alone that she received a right to sue letter for them. (It seems likely that any claims authorized by earlier letters would be time-barred at this point, which is perhaps why plaintiff does not mention them in her opposition.) Instead, she invokes the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367, asserting that because her ADA claims arise out of the same nucleus of operative fact as her Title VII claims, she can avoid the exhaustion requirement in the ADA.

This is mixing apples and oranges. Supplemental jurisdiction cannot be used to circumvent an administrative exhaustion requirement. Cf. McNight v. Dormitory Auth. of the State of N.Y., 995 F. Supp. 70, 81 (N.D.N.Y. 1998) (declining to exercise supplemental jurisdiction over state law claims where plaintiff had failed to exhaust part of Title VII claim because supplemental jurisdiction would circumvent the exhaustion requirement). Congress has precluded courts from hearing Title VII claims unless the EEOC or an equivalent state agency has had the opportunity to investigate them. Plaintiff is confusing supplemental jurisdiction with the "reasonable relation" or "sufficient relation" rule, which holds that if the EEOC would necessarily be expected to investigate a claim not expressly referenced in the administrative complaint, then that claim will be deemed exhausted as well as the referenced claim. The "reasonable relation" rule applies in three circumstances: "(1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) where the claim alleges an employer's retaliation for filing an EEOC charge; and (3) where a plaintiff alleges further incidents of discrimination carried out in the same manner alleged in precisely [sic] the EEOC charge." Carter v. New Venture Gear, Inc., 310 F. App'x 454, 458 (2d Cir. 2009) (citing Butts v. City of New York

Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402 (2d Cir. 1993), superseded by statute on other grounds, Civ. Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071.

Since plaintiff has failed to even submit the administrative complaint that led to the right-to-sue letter annexed to her complaint, she necessarily fails to establish that her Title VII claims fall within her administrative complaint; she has offered me nothing to compare the allegations of ADA violations in the administrative complaint with the Title VII violations alleged here. Instead, she offers the conclusory assertion that, "[t]he discriminatory issues Plaintiff has endured against the Defendant all arise from the same nucleus of operative fact; discrimination in relation to race, disability, and corresponding claims against the Defendant are all so related that there is little division between the overall issues presented." This *ipse dixit* is insufficient to bring her Title VII within any of the three circumstances where the reasonable relation rule may be applied. This is especially true in light of the extensive authority holding that exhausting a claim of discrimination under one statute does not ordinarily constitute exhaustion under another. See, e.g., Marshall v. NYC Bd. of Elections, 322 F. App'x 17, 18 (2d Cir. 2009) (religious discrimination not related to administrative claim for race and gender); Mathura v. Council for Human Servs. Home Care Servs. Inc., 107 F.3d 3 (2d Cir. 1997) (summary order) (claims limited to race and color because others not raised in administrative complaint); Warshun v. New York Cmty. Bancorp, Inc., 957 F. Supp. 2d 259, 268 (E.D.N.Y. 2013) (age and gender discrimination insufficient to exhaust racial discrimination claim); Musaji v. Banco Do Brasil, No. 10. Civ. 8541, 2011 WL 2507712, at *5 (S.D.N.Y. June 21, 2011) (race, national origin, and age discrimination claims not exhausted by administrative complaint on other grounds); Harris v. Am. Protective Servs. of New York, Inc., 1 F. Supp. 2d 191, 195 (W.D.N.Y. 1998) (sex discrimination claim inadequate to exhaust race or disability discrimination claims).

In any event, I do not know to what plaintiff thinks her Title VII claim is supplemental, since she has not even pled an ADA claim. The Title VII claims are therefore dismissed as unexhausted.

### III. FMLA claims

Unlike Title VII, the FMLA does not require administrative exhaustion. See 29 U.S.C. § 2617; Singh v. New York State Dep't of Taxation and Fin., No. 06-CV-00299, 2011 WL 3273465, at *26 (W.D.N.Y. July 28, 2011); Spurlock v. NYNEX, 949 F. Supp. 1022, 1030 (W.D.N.Y. 1996). In her opposition to defendant's motion, plaintiff explains that she is attempting to state two claims under the FMLA. Her first claim is that defendants "interfered" in some unspecified way with leave to which she was entitled to care for her mother. Her second claim is that she was retaliated against for having requested leave.[1]

I do not see a plausible FMLA claim under either theory. There is no allegation that plaintiff was ever denied family leave, let alone any facts or circumstances that would show any animus to granting it. The closest she comes is to allege "upon information and belief" (everything in this amended complaint is alleged on information and belief) that DOH "failed to process Plaintiff's FMLA request or to afford Plaintiff the rights promulgated under its basic FMLA Leave Entitlement Policy." I do not know what this means, but I see no factual allegations that would support the determination that there was an "interference," and this conclusory allegation is insufficient as it fails to give defendant any notice of what it is being sued for and why.

More fundamentally, a reassembling of the allegations in the amended complaint into a coherent chronology shows that any claim under the FMLA cannot be plausibly stated. The amended complaint alleges that plaintiff was placed on indefinite leave because of her mental

---

[1] Plaintiff's attempted explanation of this claim in her memorandum in opposition is incoherent.

condition in January, 2016. She did not request FMLA leave until seven months later, in July 2016. Since she was paid for her indefinite leave, DOH, if it did deny her FMLA leave (which again is not alleged), actually did her a favor by not requiring her to use it. I see no way that plaintiff can state a plausible FMLA claim, whether by interference or retaliation, when she was already on indefinite paid leave when she requested it.

**IV.    State law claims**

Under 28 U.S.C. § 1367, a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In deciding whether to exercise supplemental jurisdiction, the court must balance the "values of judicial economy, convenience, fairness, and comity . . . ." Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). The Supreme Court has made it clear that where all federal-law claims have been eliminated, "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. at 350 n. 7; see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. . . . [I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well.").

Here, all federal claims have been dismissed and there is nothing so unusual about this case that compels the exercise of supplemental jurisdiction. Therefore, plaintiff's state law claims will be dismissed without prejudice to recommencement in state court.

## CONCLUSION

Defendant's motion to dismiss is granted. Plaintiff's FMLA claims are dismissed; her Title VII claims are dismissed subject to exhaustion; and her state law claims are dismissed without prejudice. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

                                                              U.S.D.J.

Dated: Brooklyn, New York
          February 4, 2017